1

2

3

4

5

6

7

8                                  UNITED STATES DISTRICT COURT

9                            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SERGEI PORTNOY,                                No.  2:13-cv-0314-JAM-KJN PS

12                  Plaintiff,

13        v.                                        ORDER AND

14   COUNTY OF YOLO, et al.,                        FINDINGS AND RECOMMENDATIONS

15

16                  Defendants.

17

18   INTRODUCTION

19          Plaintiff Sergei Portnoy, proceeding without counsel, commenced this action on February

20   19, 2013, alleging a claim under the Fourth Amendment to the United States Constitution

21   pursuant to 42 U.S.C. § 1983, as well as California state law claims, against the Yolo County

22   Sheriff Department and the Monroe Detention Center.  (ECF No. 1.)[1]  On February 22, 2013, the

23   court granted plaintiff's request to proceed in forma pauperis and directed service on defendant

24   County of Yolo ("Yolo County").  (ECF No. 3.)  In directing service on Yolo County only, the

25   court noted:

26   ////

27   _____

28   [1] This case proceeds before the undersigned pursuant to E.D. Cal. L.R. 302(c)(21) and 28 U.S.C.
     § 636(b)(1).

1

1

2       Plaintiff's complaint actually names the Yolo County Sheriff
        Department and the Monroe Detention Center as defendants.
3       However, defendant Yolo County Sheriff Department is an
        improper party to the action, because it is merely a department or
        subdivision of the local government entity that should be properly
4       named as a party, in this case the County of Yolo.  See Pellum v.
        Fresno Police Dep't, 2011 WL 350155, at *2 (E.D. Cal. Feb. 2,
5       2011); Vance v. County of Santa Clara, 928 F. Supp. 993, 996
        (N.D. Cal. 1996) (noting that the term "persons" for purposes of
6       section 1983 does not encompass municipal departments); Stump v.
        Gates, 777 F. Supp. 808, 816 (D. Colo. 1991) ("naming a municipal
7       department as a defendant is not an appropriate means of pleading a
        § 1983 action against a municipality").  However, in the interests of
8       efficiency and because the County of Yolo is clearly implicated by
        plaintiff's allegations regarding the Yolo County Sheriff
9       Department, the court instead directs service on the County of
        Yolo.  Furthermore, because the Monroe Detention Center, as
10      alleged in plaintiff's complaint, is simply a jail operated by the
        Yolo County Sheriff Department, it is a superfluous party to the
11      action and need not be served in addition to the County of Yolo
        itself.

12   (ECF No. 3 at 2 n.2.)

13          Subsequently, on April 16, 2013, defendant Yolo County filed a motion to dismiss

14   plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 7.)  On May

15   14, 2013, the court granted Yolo County's motion to dismiss, but granted plaintiff leave to file an

16   amended complaint addressing the deficiencies noted in the court's order.  (ECF No. 12.)

17          Thereafter, on May 29, 2013, plaintiff filed a first amended complaint.  (ECF No. 13.)

18   Apart from Yolo County, the first amended complaint named five (5) additional defendants:

19   Woodland Police Department Detective Richard Towle; the City of Woodland; Yolo County

20   Correctional Officer Mark Tompkins; an unknown officer in charge of accepting detainees; and

21   an unknown officer in charge of releasing detainees.  (Id.)  The first amended complaint also

22   added additional state law tort claims and a claim for loss of familial association in violation of

23   the Fourteenth Amendment to the United States Constitution.  (Id.)

24          Presently pending before the court is Yolo County's motion to dismiss plaintiff's first

25   amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), filed on June 12, 2013,

26   and noticed for hearing on July 18, 2013.  (ECF No. 15.)  On June 18, 2013, plaintiff filed an

27   opposition to the motion, and on July 11, 2013, Yolo County filed a reply brief.  (ECF No. 16,

28   17.)

In addition to Yolo County's motion, and because plaintiff is proceeding in forma pauperis, plaintiff's new claims are also pending before the court for screening pursuant to 28 U.S.C. § 1915.  Because many of these additional claims overlap with, or are at least to some extent implicated by the claims addressed in Yolo County's motion to dismiss, the court globally analyzes the claims in plaintiff's first amended complaint in this order, findings, and recommendations.

At the July 18, 2013 hearing, plaintiff appeared and represented himself, and Amanda McDermott appeared on behalf of Yolo County.  (ECF No. 18.)  After considering the parties' briefing related to the motion to dismiss, the parties' oral argument, the allegations of plaintiff's first amended complaint, and the applicable law, the court recommends that Yolo County's motion to dismiss be granted and that the entire action be dismissed with prejudice.

BACKGROUND FACTS

The background facts are taken from plaintiff's first amended complaint.  (See First Amended Complaint, ECF No. 13 ["FAC"].)  Plaintiff, a resident of Woodland, California, alleges that on February 23, 2011, he was arrested by Woodland Police Department officers and delivered to the Yolo County jail (the Monroe Detention Center).  (Id. ¶¶ 1, 21, 25, 27.)  Plaintiff was arrested without a warrant, but pursuant to a "Probable Cause Declaration" made by defendant and Woodland Police Department officer Towle.  (Id. ¶¶ 21-22, Exs. 5, 6.)  The Probable Cause Declaration, attached to plaintiff's first amended complaint, provided the following alleged facts in support of probable cause for plaintiff's arrest:[2]

> On 11/21/10, 11/23/10, 11/26/10, Sergei deposited three checks from US Federal Savings Bank for $2,000.00 each into his wife's checking account at River City Bank (199 Main St Woodland), for a total of $6,000.00.  Sergei then withdrew the $6,000.00 from the checking account.  The checks were returned from US Federal Savings Bank stating there were insufficient funds.  All the transactions were done at the ATM at River City Bank 199 Main Street Woodland, and were documented on video surveillance footage, which shows Sergei making the deposits and withdrawing

---

[2]  The contents of the Probable Cause Declaration, attached to plaintiff's complaint, are set forth in this order for background purposes only.  The court makes no determination regarding the ultimate truth or falsity of the facts outlined in the declaration in support of plaintiff's arrest.

1   the funds.

2   Sergei had permission from his wife, Elena Portnoy to use the River
    City Bank account and had been doing so for several transactions
3   prior to 11/21/10.

4   (Id. ¶ 22, Exs. 5, 6.)  The booking charge was listed as California Penal Code section 476a, which

5   relates to what is colloquially referred to as "writing bad checks," and can potentially be charged

6   as either a felony or a misdemeanor.  See Cal. Penal Code § 476a.[3]

7       The Probable Cause Declaration noted the date/time of plaintiff's arrest to be February 23,

8   2011, at 11:08 a.m., with a 48-hour expiration date/time of February 25, 2011, at 11:08 a.m.

9   (FAC, Ex. 5.)  The Probable Cause Declaration also indicated that the facts in support of probable

10  cause were provided by defendant and Yolo County correctional officer Tompkins to a Judge Fall

11  on February 24, 2011, at 7:30 a.m.  (Id.)  Although the boxes indicating whether or not probable

12  cause was found are blank, there is a handwritten February 24, 2011, "OK" notation followed by

13  what appears to be Judge Fall's signature, suggesting that Judge Fall had found probable cause on

14  that date.  (Id.)

15      Plaintiff claims that he continued to be detained after expiration of the permissible

16  48-hour period on February 25, 2011, at 11:08 a.m. (FAC ¶¶ 25, 29.)  At around 1:00-1:30 p.m.

17  on February 25, 2011, plaintiff was allegedly handcuffed and brought to the courthouse against

18  his will where commissioner Janene Beronio issued an order for his release, purportedly

19  dismissing all charges against plaintiff.  (Id. ¶¶ 30-31, Ex. 7.)[4]  Plaintiff was then delivered back

20  _____

21  [3]  However, the statute does not merely criminalize the writing of bad checks.  In particular, the
    statute provides that "[a]ny person who, for himself or herself, as the agent or representative of
22  another, or as an officer of a corporation, willfully, with intent to defraud, makes or draws or
    utters or delivers a check, draft, or order upon a bank or depositary, a person, a firm, or a
23  corporation, for the payment of money, knowing at the time of that making, drawing, uttering, or
    delivering that the maker or drawer or the corporation has not sufficient funds in, or credit with
24  the bank or depositary, person, firm, or corporation, for the payment of that check, draft, or order
    and all other checks, drafts, or orders upon funds then outstanding, in full upon its presentation,
25  although no express representation is made with reference thereto, is punishable by imprisonment
    in a county jail for not more than one year, or pursuant to subdivision (h) of Section 1170.  Cal.
26  Penal Code § 476a(a).

27
    [4] The state court order attached to plaintiff's complaint appears to indicate that plaintiff's
28  arraignment was continued to March 25, 2011, and that plaintiff was ordered released on his own

                                    4

1    to the jail, where he was released around 9:00 p.m. that night.  (Id. ¶ 25.)

2          Plaintiff essentially contends that he was unlawfully detained from 11:08 a.m. (the

3    expiration of the 48-hour period since his arrest) until 9:00 p.m. on February 25, 2011, in

4    violation of the Fourth Amendment to the U.S. Constitution.  Plaintiff further states that his

5    having been handcuffed and transported between the jail and the court amounted to assault and

6    kidnapping.  Plaintiff's first amended complaint asserts the following claims, presumably against

7    all defendants: (1) violation of the Fourth Amendment to the U.S. Constitution; (2) false

8    imprisonment; (3) negligence; (4) breach of duty; (5) assault; (6) kidnapping; (7) loss of familial

9    association; (8) intentional misrepresentation; (9) intentional infliction of emotional distress; and

10   (10) negligent infliction of emotional distress.  (FAC at 1.)  Plaintiff seeks compensatory and

11   punitive damages for a total amount of $1,000,000.00.  (Id. at 6.)

12   LEGAL STANDARDS

13        Motion to Dismiss

14        A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

15   challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

16   Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

17   of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

18   plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see

19   also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "To survive a motion to dismiss,

20   a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

21   is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v.

22   Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

23   factual content that allows the court to draw the reasonable inference that the defendant is liable

24   for the misconduct alleged."  Id.

25   ////

26

27   recognizance.  (FAC, Ex. 7.)  However, the court need not resolve this inconsistency, because
     whether plaintiff's charges were dismissed on February 25, 2011, as plaintiff alleges, or at some
28   later juncture is irrelevant to the resolution of plaintiff's claims here.

5

1     In considering a motion to dismiss for failure to state a claim, the court accepts all of the

2     facts alleged in the complaint as true and construes them in the light most favorable to the

3     plaintiff.  Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007).  The court is "not,

4     however, required to accept as true conclusory allegations that are contradicted by documents

5     referred to in the complaint, and [the court does] not necessarily assume the truth of legal

6     conclusions merely because they are cast in the form of factual allegations."  Paulsen, 559 F.3d at

7     1071.  The court must construe a pro se pleading liberally to determine if it states a claim and,

8     prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity

9     to cure them if it appears at all possible that the plaintiff can correct the defect.  See Lopez v.

10    Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica Police

11    Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed,

12    particularly where civil rights claims are involved"); see also Hebbe v. Pliler, 627 F.3d 338, 342

13    & n.7 (9th Cir. 2010) (stating that courts continue to construe pro se filings liberally even when

14    evaluating them under the standard announced in Iqbal).

15    In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may generally

16    consider only allegations contained in the pleadings, exhibits attached to the complaint, and

17    matters properly subject to judicial notice."  Outdoor Media Group, Inc. v. City of Beaumont, 506

18    F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  Although the court may not

19    consider a memorandum in opposition to a defendant's motion to dismiss to determine the

20    propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194,

21    1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in deciding

22    whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir.

23    2003).

24    Screening Pursuant to 28 U.S.C. § 1915

25    Whether screening an original complaint or new claims asserted in an amended complaint

26    by a plaintiff proceeding in forma pauperis, the court is directed to dismiss the case and/or claim

27    at any time if it determines that the allegation of poverty is untrue, or if the action or claim is

28    frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary

6

1    relief against an immune defendant.  28 U.S.C. § 1915(e)(2).  Essentially the same legal standards

2    and principles involved in adjudicating a motion to dismiss pursuant to Federal Rule of Civil

3    Procedure 12(b)(6), as outlined above, apply in the context of screening.

4    DISCUSSION

5            With these principles in mind, the court now turns to plaintiff's specific claims.

6            Claims Based on 2006 Arrest

7            Plaintiff's first amended complaint includes allegations regarding an arrest and detention

8    in 2006, also for an alleged violation of California Penal Code section 476a, during which

9    plaintiff was purportedly held without a warrant for several hours longer than the permitted 48-

10   hour period.  (FAC ¶¶ 8-20.)  Yolo County correctly contends that any section 1983 claim based

11   on this incident is time barred.

12           "The statute of limitations applicable to an action pursuant to 42 U.S.C. § 1983 is the

13   personal injury statute of limitations of the state in which the cause of action arose."  Alameda

14   Books, Inc. v. City of Los Angeles, 631 F.3d 1031, 1041 (9th Cir. 2011).  The applicable

15   California limitations period is two years.  Cal. Civ. Proc. Code § 335.1.  Although state law

16   supplies the length of the limitations period applicable to the section 1983 claim, "the

17   determination of the point at which the limitations period begins to run is governed solely by

18   federal law.  Under federal law, the touchstone for determining the commencement of the

19   limitations period is notice: a cause of action generally accrues when a plaintiff knows or has

20   reason to know of the injury which is the basis of his action."  Hoesterey v. City of Cathedral

21   City, 945 F.2d 317, 318-19 (9th Cir. 1991).

22           In this case, plaintiff became aware of the alleged injury at the time of his detention and

23   release in 2006.  Therefore, the statute of limitations for any section 1983 claim based on

24   plaintiff's 2006 arrest and detention has run.  Moreover, in his opposition, plaintiff clarifies that

25   he does not intend to include any claims based on the 2006 incident in the present action.  (ECF

26   No. 16 at 7.)  Nevertheless, in the interest of clarity, the court recommends that any section 1983

27   claims based on the 2006 incident be dismissed with prejudice.

28   ////

<u>State Law Claims</u>

As noted above, plaintiff's first amended complaint, when liberally construed, contains numerous state law tort claims against defendants; in particular, claims for false imprisonment, negligence, breach of duty, assault, kidnapping, intentional misrepresentation, intentional infliction of emotional distress, and negligent infliction of emotional distress.  (FAC at 1.)[5]  Yolo County argues, as it did in its first motion to dismiss, that these claims are subject to dismissal, because plaintiff failed to allege compliance with the claim presentation requirements of California's Government Claims Act, Cal. Gov't Code §§ 810 et seq.

Generally, no suit for money or damages may be brought against a public entity until a written claim therefor has been presented to the public entity, and the claim has either been acted upon or has been deemed to be rejected.  Cal. Gov't Code § 945.4.  This claim presentation requirement likewise applies to claims against a public employee.  Cal. Gov't Code § 950.2.  A claim relating to a cause of action for an "injury to person" must be presented not later than six months after the accrual of the cause of action.  Cal. Gov't Code § 911.2(a).  "Compliance with the claims statute is mandatory, and failure to file a claim is fatal to the cause of action."  <u>Pacific Tel. & Tel. Co. v. Cnty. of Riverside</u>, 106 Cal. App. 3d 183, 188 (1980).

In its order granting Yolo County's previous motion to dismiss with leave to amend, the court outlined these principles and explained that, even though exhaustion of administrative remedies is not required to assert a claim under 42 U.S.C. § 1983, the remainder of plaintiff's state law claims are subject to the claim presentation requirements of California's Government Claims Act.  The court instructed plaintiff that, if he elects to assert state law tort claims in any amended complaint, he must allege compliance with the claim presentation requirements of California's Government Claims Act, assuming he can do so in good faith in accordance with Rule 11 of the Federal Rules of Civil Procedure, and must attach copies of the written claims filed to any amended complaint.  (ECF No. 12 at 9-10.)

---

[5] Many of these claims only appear as part of a list on the first page of the complaint and are not pled as separate claims in the body of the complaint.  (FAC at 1.)  Indeed, the complaint contains little factual allegations in support of many of the state law claims.

1    Plaintiff's first amended complaint again fails to allege compliance with California's

2    Government Claims Act and fails to include copies of any written claims filed in accordance with

3    that statute.  In his opposition, plaintiff essentially concedes that he has not exhausted

4    administrative remedies, contending that compliance with California's Government Claims Act is

5    not required to assert a claim under 42 U.S.C. § 1983.  (ECF No. 16 at 6.)  That argument is

6    devoid of merit, because California's Government Claims Act does apply to plaintiff's state law

7    tort claims.  Plaintiff also argues that California's Government Claims Act should not apply,

8    because plaintiff's imprisonment "necessarily involves a factual determination" and because

9    plaintiff feels that certain remedies could not be obtained in the administrative process.  (Id. at 7.)

10   However, plaintiff provides no authority for the proposition that these issues obviate the need to

11   comply with California's Government Claims Act.

12   At the hearing, plaintiff suddenly represented that he had in fact filed an administrative

13   claim with the City of Woodland, although he admitted that no such claim was filed with Yolo

14   County.  As an initial matter, the court notes that plaintiff's representation does not change the

15   exhaustion analysis with respect to Yolo County and its officers, because Yolo County and the

16   City of Woodland are separate entities.  Any administrative claim filed with the City of

17   Woodland plainly would not satisfy plaintiff's exhaustion requirement as to claims against Yolo

18   County and its officers.

19   Furthermore, the court finds that granting further leave to amend to allege exhaustion of

20   administrative remedies with respect to the state law claims against the City of Woodland

21   defendants would be futile.  The only plausible involvement of the City of Woodland (and in

22   particular, Woodland Police Department detective Towle), was with plaintiff's arrest and the

23   completion of the Probable Cause Declaration in support of plaintiff's arrest.  However, as

24   discussed in greater detail below, plaintiff is collaterally estopped from contending that there was

25   a lack of probable cause for that arrest by a judgment in another action.  Thus, because plaintiff's

26   arrest and initial detention were proper, plaintiff cannot plausibly allege any state law claims

27   against the City of Woodland defendants based on those events.

28   ////

1    For these reasons, the court recommends that plaintiff's state law claims against all

2    defendants be dismissed with prejudice.

3    Claims for Violation of the Fourth Amendment under 42 U.S.C. § 1983

4    *Individual Defendants (Defendants Towle, Tompkins, Unknown Officer in Charge*

5    *of Accepting Detainees; and Unknown Officer in Charge of Releasing Detainees)*

6    As an initial matter, to the extent that plaintiff bases any Fourth Amendment claim on a

7    lack of probable cause for his February 23, 2011 arrest and initial detention, such a claim is

8    barred by the doctrine of collateral estoppel.

9    At the time that plaintiff filed his original complaint in this action, plaintiff had another

10   pending action in this court against the City of Woodland and three of its officers, including

11   defendant Towle, concerning the circumstances of his arrest and detainment on February 23,

12   2011.  See Portnoy v. City of Woodland, et al., 2:11-cv-1720-GEB-EFB.  In that other action, the

13   court recently, on July 1, 2013, granted summary judgment in favor of all defendants, ruling, *inter*

14   *alia*, that there was probable cause for the February 23, 2011 arrest and detention.  (See Yolo

15   County's Request for Judicial Notice, ECF No. 17-1 ["RJN"], Exs. A & B.)[6]  Yolo County argues

16   that that determination precludes plaintiff, i.e., he is collaterally estopped, from pursuing a claim

17   challenging whether probable cause existed for his February 23, 2011 arrest and initial detention.

18   "Where a federal court has decided the earlier case, federal law controls the collateral

19   estoppel analysis.  Three factors must be considered before applying collateral estoppel: (1) the

20   issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have

21   _____

[6] Under Federal Rule of Evidence 201, a court may take judicial notice of matters of public
22   record. Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001); see also Fed. R. Evid.
     201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because
23   it…can be accurately and readily determined from sources whose accuracy cannot reasonably be
     questioned.").  A federal district court "may take notice of proceedings in other courts, both
24   within and without the federal judicial system, if those proceedings have a direct relation to
     matters at issue."  U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d
25   244, 248 (9th Cir. 1992).  Here, Yolo County requests that the court take judicial notice of the
     magistrate judge's findings and recommendations, as well as the district judge's order adopting
26   those findings and recommendations, in another action plaintiff filed in this court.  Because these
     are public court documents whose accuracy cannot reasonably be disputed, and because the
27   documents relate to the issue of collateral estoppel presented in this case, the court grants Yolo
     County's request for judicial notice.

28

1    been actually litigated [by the party against whom preclusion is asserted] in the prior litigation;

2    and (3) the determination of the issue in the prior litigation must have been a critical and

3    necessary part of the judgment in the earlier action." McQuillion v. Schwarzenegger, 369 F.3d

4    1091, 1096 (9th Cir. 2004).

5         Here, the February 23, 2011 arrest at issue in plaintiff's other action was the same arrest

6    that forms the basis of plaintiff's present action.  The issue of probable cause in support of that

7    arrest was actually litigated and determined in the context of the defendants' motion for summary

8    judgment in that case, which challenged, among other claims, plaintiff's claim for a Fourth

9    Amendment violation based on an unlawful arrest.  (See RJN Ex. A at 14, 20-22, 33; Ex. B.)

10   Plaintiff opposed the motion for summary judgment through written briefing and oral argument at

11   a hearing, and also filed objections to the magistrate judge's findings and recommendations.  (See

12   generally RJN, Exs. A & B.)  Thus, plaintiff had a full and fair opportunity in that action to

13   litigate the issue of probable cause for the February 23, 2011 arrest and initial detention, and the

14   issue was actually determined as a critical and necessary part of the court's judgment in the

15   defendants' favor on plaintiff's unlawful arrest claim.

16        In light of the foregoing, the court concludes that plaintiff's first amended complaint fails

17   to state a Fourth Amendment claim against defendant Towle upon which relief can be granted.

18   Defendant Towle's sole involvement in the case was with plaintiff's initial arrest and the

19   completion of the Probable Cause Declaration in support of plaintiff's arrest.  There are no

20   alleged facts, beyond plaintiff's mere conclusory allegations, suggesting that defendant Towle, as

21   the supervisory Woodland Police Department arresting officer, had any involvement with the

22   length of plaintiff's subsequent detention at the Yolo County jail.  Indeed, in plaintiff's above-

23   mentioned prior action, the court expressly found that the Woodland Police Department officers,

24   including defendant Towle, were also entitled to summary judgment on plaintiff's unlawful

25   detention claim in that case, because they had "no control over whatever delay occurred in

26   processing an initial appearance or establishing bail."  (RJN, Ex. A at 24, Ex. B.)  Therefore,

27   plaintiff is also collaterally estopped by the judgment in the other action from attempting to

28   relitigate in this action defendant Towle's involvement in the length of plaintiff's subsequent jail

11

1  detention.[7]  Plaintiff's Fourth Amendment claim against defendant Towle should be dismissed

2  with prejudice.

3         Additionally, plaintiff provides no rationale as to how some unidentified officer in charge

4  of accepting detainees committed a Fourth Amendment violation.  Given that plaintiff's arrest

5  and initial detention was supported by probable cause, there was nothing improper about the

6  unidentified officer administratively accepting plaintiff for booking.  Any Fourth Amendment

7  claim against such an unidentified officer should likewise be dismissed with prejudice.

8         The true gist of plaintiff's Fourth Amendment claim in the present action is that he was

9  detained for approximately 2 – 2.5 hours beyond the expiration of the permissible 48 hour-period

10 for a warrantless arrest (which expired on February 25, 2011, at 11:08 a.m.), before being brought

11 before Commissioner Berronio at 1:00-1:30 p.m. on February 25, 2011.  (FAC ¶¶ 29-31.)[8]  The

12 United States Supreme Court held that suspects who are arrested without a warrant must

13 generally be provided with a judicial determination of probable cause within 48 hours of arrest.

14 County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991).

15        In its motion, Yolo County appears to argue that plaintiff's claim of unlawful detention

16 beyond the 48-hour period, without a judicial probable cause determination, is also barred by

17

18 [7] Moreover, even if, as plaintiff's conclusory allegations suggest, defendant Towle (as opposed to
   defendant Tompkins) was the person responsible for presenting plaintiff's case materials to a
19 judge for a judicial probable cause determination within 48 hours (FAC ¶ 28), defendant Towle
   would be entitled to qualified immunity for the same reasons discussed below with respect to
20 defendant Tompkins.

21 [8] Plaintiff further complains that Commissioner Berronio did not actually make a probable cause
22 determination and that he was only released later that evening at 9:00 p.m.  (FAC ¶¶ 25, 31.)
   However, it is undisputed that Commissioner Berronio ordered plaintiff to be released, and
23 according to plaintiff, he was ordered released without any charges.  (FAC ¶ 31.)  Moreover, to
   the extent that plaintiff claims a Fourth Amendment violation based on the delay between
24 Commissioner Berronio's release order and his actual release that evening, that claim lacks merit.
   As the court noted in its previous order on Yolo County's first motion to dismiss, the fact that
25 plaintiff was not immediately released after the commissioner's order does not in itself violate the
   Fourth Amendment, because plaintiff logically needed to first be transported back to the jail for
26 completion of administrative release procedures.  See Brass v. Cnty. of Los Angeles, 328 F.3d
   1192 (9th Cir. 2003) (holding that a 39-hour delay in releasing arrestee after a court order,
27 pursuant to the county's policy or custom of processing court-ordered releases after other
   releases, did not violate arrestee's constitutional rights).

28

1    collateral estoppel, i.e., by the ultimate finding in the other action that plaintiff's arrest and initial

2    detention was supported by probable cause.  The court disagrees.  Even if an arrest is ultimately

3    found to be supported by probable cause, an arrestee is nonetheless entitled to a judicial probable

4    cause determination within 48 hours of the arrest, and failure to timely provide such a probable

5    cause determination appears to be a separate and independent harm.  Yolo County conceded as

6    much at the hearing.

7           Nonetheless, for the reasons discussed below, the court finds that plaintiff's Fourth

8    Amendment claim based on his alleged detention beyond the 48-hour period is fatally deficient.

9    Significantly, even though plaintiff alleges that he was only brought to court on February 25,

10   2011, after expiration of the 48-hour period, the Probable Cause Declaration (attached to

11   plaintiff's first amended complaint) notes that the facts supporting probable cause were provided

12   by defendant Yolo County correctional officer Tompkins to Judge Fall via facsimile on February

13   24, 2011, at 7:30 a.m, i.e., within the 48-hour period.  (FAC, Ex. 5.)[9]  Although the boxes to

14   indicate whether or not probable cause was found were left blank, there is a handwritten February

15   24, 2011, "OK" notation followed by what appears to be Judge Fall's signature, suggesting that

16   Judge Fall had found probable cause on that date.  (Id.)  In the court's previous order granting

17   Yolo County's first motion to dismiss with leave to amend, the court stated: "Importantly, if

18   plaintiff disputes that Judge Fall had made a probable cause determination on February 24, 2011,

19   plaintiff shall specify the factual basis for such an assertion in any amended complaint, if he can

20   do so in good faith within the strictures of Federal Rule of Civil Procedure 11."  (ECF No. 12 at

21   8.)  However, plaintiff's first amended complaint fails to specify any factual basis for disputing

22   ─────────────────────
     [9] In his first amended complaint, plaintiff attacks the veracity of defendant Tompkins's

23   declaration filed in the other action, which states that part of defendant Tompkins's duties at the
     jail was to process Probable Cause Declarations to the Yolo County judges for purposes of

24   making probable cause determinations.  Plaintiff contends that defendant Tompkins's statement is
     inconsistent with a correctional officer's duties as described in Exhibit 9 to the first amended

25   complaint (a Yolo County human resources description of duties of a correctional officer).  (FAC
     ¶¶ 32-33, Ex. 9.)  However, that exhibit specifically states that a correctional officer performs

26   "processing of booking, bail, warrants and court paperwork."  (FAC, Ex. 9.)  In short, apart from
     the questionable relevance of plaintiff's argument to this proceeding, there does not appear to be

27   any inconsistency between defendant Tompkins's declaration in the other action and Exhibit 9 to
     plaintiff's first amended complaint.

28

1   the notation by Judge Fall.  Thus, plaintiff's allegations appear to be contradicted by his own

2   exhibit attached to the complaint.

3           Notably, in his opposition to Yolo County's present motion to dismiss, plaintiff does not

4   dispute that the Probable Cause Declaration was provided to Judge Fall or that Judge Fall made

5   the notation on the Probable Cause Declaration.[10]  Instead, plaintiff argues that Judge Fall's

6   notation has a "thousand meanings" and does not definitively indicate that Judge Fall actually

7   found probable cause.  (ECF No. 16 at 2.)  Plaintiff also notes that the court in the other above-

8   mentioned action declined to grant summary judgment on plaintiff's unlawful arrest claim based

9   on Judge Fall's subsequent finding of probable cause alone, because, in that court's view, it was

10  unclear whether Judge Fall's "OK" was intended to indicate that he found probable cause for the

11  arrest.  (Id.)

12          Although the court is somewhat strained to find another plausible interpretation for Judge

13  Fall's "OK" designation, the court observes that the question presented to the court in the other

14  action was somewhat different.  In that case, the defendants argued that they were entitled to

15  summary judgment on plaintiff's unlawful arrest claim by virtue of Judge Fall's subsequent

16  probable cause finding alone.  (RJN, Ex. A at 19.)  The court in that case noted a potential

17  ambiguity in Judge Fall's notation and instead proceeded to find, as discussed above, that there

18  was probable cause for plaintiff's arrest on independent grounds.  (Id. at 20-22.)  By contrast, the

19  question in this case is not whether there was probable cause for plaintiff's arrest, but instead

20  whether defendant Tompkins (or other officers) violated plaintiff's Fourth Amendment rights by

21  failing to take the necessary steps to provide plaintiff with a judicial probable cause determination

22  within 48 hours of the arrest.

23          Even if the court gives plaintiff the benefit of the doubt and assumes that Judge Fall's

24  notation on the Probable Cause Declaration did not actually indicate that Judge Fall had found

25  _____

26  [10] After being given another opportunity at the hearing to provide some factual basis for disputing
    that Judge Fall actually made such a notation on the Probable Cause Declaration, plaintiff merely
27  vaguely hinted at fraud and collusion between the defendants and generally objected to the
    practice of making probable cause determinations by facsimile.  The court has thus satisfied itself
28  that plaintiff has no factual basis to dispute that Judge Fall made the notation.

1    probable cause, defendant Tompkins (or any other officer in charge of release of detainees) would

2    be entitled to qualified immunity, because their interpretation of such a notation would have been

3    at most a reasonable mistake of fact.  As the United States Supreme Court has explained:

> The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.   Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.   The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.

Pearson v. Callahan, 555 U.S. 223, 231 (2009).  "The qualified immunity standard gives ample

room for mistaken judgments by protecting all but the plainly incompetent or those who

knowingly violate the law."  Hunter v. Bryant, 502 U.S. 224, 229 (1991).

Here, even if plaintiff's interpretation is to be believed, defendant Tompkins (or any other

officer in charge of release of detainees) was at most reasonably mistaken as to whether a judicial

probable cause determination was made within the 48-hour period.  Plaintiff's factual allegations

do not raise a plausible inference that these officers were incompetent or that they knowingly

violated plaintiff's rights.  Thus, even if plaintiff's constitutional rights were violated, these

officers are entitled to qualified immunity.

Accordingly, plaintiff's Fourth Amendment claims against defendant Tompkins and the

"unknown officer in charge of releasing detainees" are also subject to dismissal.  In light of the

fact that plaintiff was previously given leave to amend, and that it does not appear that these

claims can be cured by further amendment, the court recommends that they be dismissed with

prejudice.

Having concluded that plaintiff's Fourth Amendment claims against all the individual

defendants must be dismissed, the court now turns to an evaluation of plaintiff's Fourth

Amendment claims against the public entity defendants – Yolo County and the City of Woodland.

////

////

*Public Entity Defendants (Yolo County and the City of Woodland)*

In <u>Monell v. Dep't of Social Servs</u>., 436 U.S. 658 (1978), the United States Supreme Court held that, because there is no respondeat superior liability under 42 U.S.C. § 1983, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  <u>Monell</u>, 436 U.S. at 690-94.  Stated differently, the government entity's policy or custom must be "the moving force of the constitutional violation."  <u>Id</u>. at 694.  Furthermore,  "[t]he existence of a policy, without more, is insufficient to trigger local government liability under section 1983...[B]efore a local government entity may be held liable for failing to act to preserve a constitutional right, plaintiff must demonstrate that the official policy evidences a deliberate indifference to his constitutional rights.  This occurs when the need for more or different action is so obvious, and the inadequacy of the current procedure so likely to result in the violation of constitutional rights, that the policymakers can reasonably be said to have been deliberately indifferent to the need."  <u>Oviatt By and Through Waugh v. Pearce</u>, 954 F.2d 1470, 1477-78 (9th Cir. 1992) (citation and quotation marks omitted).  By itself, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*...."  <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823-24 (1985).

Bare or conclusory allegations regarding municipal customs, policies, or practices are insufficient to withstand a motion to dismiss.  <u>AE ex rel. Hernandez v. County of Tulare</u>, 666 F.3d 631, 637 (9th Cir. 2012).  As one federal district court in California explained:

> In order to withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist of more than mere "formulaic recitations of the existence of unlawful policies, customs, or habits."  *Warner v. Cnty of San Diego*, 2011 U.S. Dist. LEXIS 14312, at *10, 2011 WL 662993 (S.D. Cal., Feb. 14, 2011).  Prior to the Supreme Court's holdings in *Twombly* and *Iqbal*, the Ninth Circuit had held that "a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'"  *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624

1

2    (9th Cir. 1988) (quoting *Shah v. Cnty. of L.A.*, 797 F.2d 743, 747
     (9th Cir. 1986)).   In light of *Twombly* and *Iqbal*, however,
     something more is required; mere conclusory allegations are
3    insufficient.  *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 557;
     *see also Warner*, 2011 U.S. Dist. LEXIS 14312, at *10, 2011 WL
     662993.

4

5    J.K.G. v. County of San Diego, 2011 WL 5218253, at *8 (S.D. Cal. Nov. 2, 2011).

6          In its previous order granting Yolo County's first motion to dismiss with leave to amend,

7    the court carefully outlined the above-mentioned law and instructed plaintiff that, in any amended

8    complaint, plaintiff must allege specific facts, as opposed to conclusory allegations, showing that

9    a policy, custom, or practice of an entity defendant caused an underlying constitutional violation

10   and evidenced deliberate indifference to plaintiff's constitutional rights.  (ECF No. 12 at 7-9.)

11         However, plaintiff's first amended complaint again only contains conclusory allegations,

12   such as that Yolo County jail "doesn't care about legality of detention"; that the City of

13   Woodland and Yolo County practice a "municipal custom" and not mere random acts; and that

14   these entities have deliberately ignored a "history of abuses."  (FAC ¶¶ 26, 34.)  Plaintiff fails to

15   identify any specific policy, custom, or practice as the moving force or cause of the alleged

16   constitutional violations, let alone facts showing that the policy, custom, or practice amounted to

17   deliberate indifference to plaintiff's constitutional rights.

18         Even assuming that no judicial probable cause determination was actually made within the

19   48-hour period, plaintiff was brought before Commissioner Berronio approximately 2-2.5 hours

20   after expiration of the 48-hour period and ordered released, which at best amounts to a *de minimis*

21   violation.  At the hearing, plaintiff could not point to any significant harm, absent a potential

22   technical violation of the 48-hour rule, that he suffered based on that relatively slight delay.  The

23   factual allegations do not plausibly suggest any deliberate indifference by the entity defendants,

24   i.e., that there was an obvious need for different action or procedures.  Although plaintiff also

25   refers to a prior 2006 incident when he was allegedly brought before a judicial officer about 2

26   hours after expiration of the 48-hour period (FAC ¶¶ 9, 18, Ex. 4), that incident was again at most

27   a *de minimis* violation.  Simply put, two isolated instances of potential *de minimis* violations

28   several years apart, at least one of which was attributable to a reasonable mistake, do not a Monell

17

1  claim make.

2      Additionally, plaintiff entirely fails to show how any policy, custom, or practice of the

3  City of Woodland could even have played a role in plaintiff's detention at the Yolo County jail.

4      Therefore, plaintiff's <u>Monell</u> claims against defendants Yolo County and City of

5  Woodland are subject to dismissal.  Furthermore, in light of plaintiff's failure to cure the

6  deficiencies identified in the court's prior order granting leave to amend, despite significant

7  instruction regarding the requirements to state a <u>Monell</u> claim, the court concludes that further

8  leave to amend would be futile, and recommends that these claims be dismissed with prejudice.

9              <u>Claim for Violation of the Fourteenth Amendment under 42 U.S.C. § 1983</u>

10      Finally, plaintiff's first amended complaint also purports to state a loss of familial

11  association claim under the Fourteenth Amendment against all defendants.  The complaint itself

12  contains no facts in support of that claim, although plaintiff's opposition brief suggests that it is

13  based on the fact that plaintiff's children, who were 6 and 16 years old, were taken to a foster

14  home (or as plaintiff puts it, "kidnapped") for the duration of plaintiff's arrest.  Furthermore,

15  because plaintiff was released on the evening of February 25, 2011, a Friday, he was only able to

16  pick up his children from Social Services on the following Monday.  (ECF No. 16 at 9-10.)

17      Even if plaintiff were given further leave to amend to assert such facts in his complaint,

18  the loss of familial association claim would nonetheless fail.  Courts have recognized that parents

19  have a Fourteenth Amendment liberty interest in the companionship and society of their children.

20  <u>Curnow v. Ridgecrest Police</u>, 952 F.2d 321, 325 (9th Cir. 1991).  Official conduct that "shocks

21  the conscience" in depriving parents of that interest is cognizable as a violation of due process.

22  <u>Porter v. Osborn</u>, 546 F.3d 1131, 1137 (9th Cir. 2008).  In this case, there was probable cause for

23  plaintiff's arrest, for the reasons discussed above.  Additionally, the officers involved only placed

24  plaintiff's children in foster care for the time that plaintiff was detained.  This conduct was not

25  "conscience-shocking or egregious official conduct."  <u>Adams v. Albertson</u>, 2012 WL 440465, at

26  *10 (N.D. Cal. Feb. 10, 2012) (unpublished).  The fact that any defendant's reasonable mistake

27  may have led to a slightly longer detention, or that an intervening weekend may have caused a

28  minor delay in plaintiff being able to pick up his children, does not transmute the officers'

                                        18

1    conduct into conduct that shocks the conscience.

2        Therefore, plaintiff's Fourteenth Amendment claim for loss of familial association against

3    the individual defendants should be dismissed with prejudice.  For the same reasons outlined

4    above, any Monell claim against entity defendants based on an alleged Fourteenth Amendment

5    violation should likewise be dismissed with prejudice.

6    CONCLUSION

7        Accordingly, for the reasons outlined above, IT IS HEREBY ORDERED that:

8        1.  Yolo County's request for judicial notice (ECF No. 17-1) is GRANTED.

9        2.  The September 19, 2013 status (pre-trial scheduling) conference is VACATED.  If

10            necessary, the court will reset the date of that conference.

11       IT IS ALSO HEREBY RECOMMENDED that:

12       1.   Yolo County's motion to dismiss (ECF No. 15) be GRANTED.

13       2.   Plaintiff's entire action (including the claims against Yolo County and the unserved

14            defendants) be DISMISSED WITH PREJUDICE.

15       These findings and recommendations are submitted to the United States District Judge

16   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)

17   days after being served with these findings and recommendations, any party may file written

18   objections with the court and serve a copy on all parties.  Such a document should be captioned

19   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

20   shall be served on all parties and filed with the court within fourteen (14) days after service of the

21   objections.  The parties are advised that failure to file objections within the specified time may

22   waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th

23   Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

24       IT IS SO ORDERED AND RECOMMENDED.

25   Dated:  July 19, 2013

26

27                                                KENDALL J. NEWMAN
                                                 UNITED STATES MAGISTRATE JUDGE

28